UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES A. GUERRERA

      Plaintiff,

v.                                                                      Case No. 8:22-cv-00740-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

      Defendant.

_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability and disability insurance benefits (Tr. 151–52). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 73, 76). Plaintiff then requested an administrative hearing (Tr. 102–103). Per Plaintiff's request, the ALJ held a

---

[1]  Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

hearing at which Plaintiff appeared and testified (Tr. 29–60). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 28). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

**B.    Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1961, claimed disability beginning March 31, 2017 (Tr. 151). Plaintiff obtained an associates degree and nursing degree (Tr. 35). Plaintiff's past relevant work experience included work as registered nurse (Tr. 81). Plaintiff alleged disability due to migraine, chronic leg pain, chronic hip pain, dizziness, nausea, insomnia, past head injury, and past back injury (Tr. 175).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through March 31, 2021 and had not engaged in substantial gainful activity since March 31, 2017, the alleged onset date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: history of alcohol abuse and dependence and history of headaches with photophobia (Tr. 17). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19).

The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform

> medium work as defined in 20 CFR 404.1567(c) except lifting/carrying 50 pounds occasionally, 25 pounds frequently, standing/walking 6 hours in an 8-hour workday, and sitting 6 hours in an 8-hour workday, with normal breaks. He must never climb ladders, ropes, or scaffolds but can occasionally crawl and climb ramps and stairs. The claimant must avoid outdoor work as well as bright or flashing lights. He must avoid even moderate exposure to industrial hazards and unprotected heights

(Tr. 19). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 20).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform his past relevant work as a medical technician and as a registered nurse (Tr. 23). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 24).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable

legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

## III.

Plaintiff argues the ALJ erred in forming Plaintiff's RFC in two respects. First, Plaintiff contends the ALJ erred by including no mental limitations. Second, Plaintiff argues the ALJ failed to include specific limitations associated with

Plaintiff's headaches. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

###    A.    Plaintiff's Mental Limitations

Plaintiff contends the ALJ erred at step four of the sequential evaluation process by failing to include Plaintiff's mental limitations in the RFC determination. Plaintiff argues the ALJ concluded at step two of the sequential evaluation process that Plaintiff had mild limitations in all four areas of mental functioning, and yet omitted those limitations when assessing Plaintiff's RFC (Doc. 19, at 5). In response, the Commissioner contends the ALJ was not required to include such limitations in the RFC assessment because they were not an assessment of Plaintiff's RFC (Doc. 20, at 11). Additionally, the Commissioner argues substantial evidence supports the ALJ's finding that Plaintiff did not have a severe mental impairment or work-related mental limitations based on Plaintiff's lack of medical evidence evincing a psychological impairment, a lack of treatment for the alleged depression, and generally positive reports regarding activities of daily living (Doc. 20, at 8–11).

Agency regulations require a "special technique" be used by the ALJ when evaluating mental impairments. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. § 404.1520a. Essentially, this technique requires an assessment regarding how the claimant's mental impairments impact four broad functional areas, also referred to as "paragraph B"[2] criteria: (1) understanding, remembering,

---

[2] The term "paragraph B" criteria refers to the ALJ's decision at step two in deciding whether a claimant suffers from a severe impairment or at step three in deciding whether a claimant's severe impairment qualifies under a Listing. *Buckwalter v. Acting Comm'r of Soc.*

or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). In rating the degree of limitation, the SSA employs a five-point scale in evaluating Plaintiff's limitations in each of the paragraph B criteria: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). When considering a claimant's mental impairments, the ALJ must incorporate into the written decision the pertinent findings and conclusions based on the technique and must make a specific finding as to the degree of limitation for each of the paragraph B criteria. *Moore*, 405 F.3d at 1213-14; 20 C.F.R. § 404.1520a(e)(4).

The paragraph B findings are not an RFC assessment; rather, the RFC formation requires a more detailed assessment. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019). To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Schink,*

---

*Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) ("The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis."). The criteria are the same but are discussed in this case at step two wherein the ALJ decided Plaintiff's mental impairment of depressive disorder was non-severe (Tr. 17–18).

935 F.3d at 1268 ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC"); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 404.1545(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

Here, at step two of the sequential evaluation process, the ALJ considered Plaintiff's mental impairment of depressive disorder and concluded it "[did] not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities" (Tr. 17). Thus, the ALJ found Plaintiff's depressive disorder was non-severe (Tr. 17). In making this determination, the ALJ found Plaintiff had mild limitations in all four areas of the paragraph B criteria (Tr. 18). Later in the decision, the ALJ formed the RFC without any mental impairment limitations (Tr. 19).

The ALJ's task in forming the RFC is to consider the claimant's condition as a whole, including non-severe impairments. *See Schink* 935 F.3d at 1268, *Jamison*, 814 F.2d at 588. The Court finds that the ALJ properly considered Plaintiff's non-severe mental impairments in the formation of the RFC and the ALJ's conclusion that the impairments did not limit Plaintiff's ability to engage in work-like activities is supported by substantial evidence. Because Plaintiff alleged untreated depression at the hearing level, the ALJ ordered a psychological consultative evaluation by Richard L. Belsham, Ph.D to aid in the ALJ's consideration of Plaintiff's mental impairments. (Tr. 21; Doc. 19, at 5). The ALJ noted that Dr. Belsham observed Plaintiff was cooperative, capable of following both simple and complex instructions, able to maintain attention and concentration, and able to act appropriately with others (Tr. 22, 383). The ALJ also considered the medical opinions of state agency psychological consultants, who both found Plaintiff's mental impairments were non-severe (Tr. 22, 67, 80). These consultants highlighted that there is no medical evidence to show that Plaintiff has a severe mental impairment and noted that Plaintiff could attend to his own hygiene and perform other activities of daily living (Tr. 22, 67, 80). The ALJ found that "[t]his evidence, in addition to the claimant's lack of mental health treatment, indicates his depression is a nonsevere impairment" (Tr. 22). The ALJ acknowledged that healthcare "comes at a cost" but noted that there was "no evidence showing the claimant requested assistance for mental health symptoms from his primary care provider during office visits for other complaints" (Tr. 21). Furthermore, Plaintiff

fails to point to any evidence in the record that the ALJ failed to consider. Plaintiff notes that Dr. Belsham only found that Plaintiff could maintain attention and concentration "for the 'most part'" (Tr. 385; Doc. 19, at 5). While the ALJ did not discuss the specific elements of the evaluation that Plaintiff cites,[3] the ALJ clearly considered the Dr. Belsham's evaluation and found it "persuasive as it is consistent with the claimant's lack of mental health treatment" (Tr. 22). Plaintiff also notes that Plaintiff testified that his concentration is impaired by his headaches (Doc. 19, at 5; Tr. 40). However, the ALJ did acknowledge this fact, noting that Plaintiff "said that his symptoms interfere with his concentration and ability to focus on tasks" (Tr. 20). Thus, it is clear the ALJ considered Plaintiff's condition as a whole in electing to not include mental limitations in the RFC.

The crux of Plaintiff's challenge is that the ALJ's failure to include mental functional limitations in the RFC constituted error because the "mild" limitations in the paragraph B criteria required the ALJ to include mental limitations in the RFC (Doc. 19, at 6). To his credit, Plaintiff acknowledges that an ALJ's findings as to the paragraph B criteria are not an RFC finding and instead argues that the regulations classify the RFC as requiring a "more detailed assessment" (Doc. 19, at

---

[3] The ALJ does not need to address every finding set forth by a medical source. *See Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 534 (11th Cir. 2014) (citation omitted) (finding that the ALJ did not err by failing to specifically address a medical source's opinion regarding various limitations, as the ALJ's decision made clear that the ALJ considered both the medical source's opinion and the plaintiff's medical condition as a whole); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted) (indicating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" as long as the ALJ provides enough to enable the court to conclude that the ALJ considered a claimant's medical condition as a whole).

7). However, according to Plaintiff, the Commissioner "cannot reasonably argue that the RFC finding that contains no mental limitations at all is 'more detailed' than the paragraph B findings which at least point to some mental impairment of Plaintiff's ability to work" (Doc. 19, at 7). Plaintiff thus concludes that the ALJ's failure to explain why mild mental limitations were not included in the RFC "precludes meaningful judicial review, requiring remand" (Doc. 19, at 7).

The Court disagrees with Plaintiff's characterization of the ALJ's obligations. It appears that Plaintiff conflates (1) limitations in the paragraph B criteria, *see* 20 C.F.R. § 404.1520a, with (2) limitations in a claimant's RFC, *see* 20 C.F.R. § 404.1545. The limitations in the paragraph B criteria help the ALJ determine the severity of a claimant's mental impairments or whether a claimant meets a listing, while limitations in the RFC help the ALJ determine the level of work that a claimant can perform. *Compare* 20 C.F.R. § 404.1520a, *with* 20 C.F.R. § 404.1545. While some precedent suggests that a finding of a *moderate* limitation or *severe* impairment at steps two or three may require an ALJ to include such limitations in the RFC, or at least explain the decision to not include the limitations, here, the ALJ never found Plaintiff's depressive disorder caused *work-related* limitations. For example, in *Winschel*, the Eleventh Circuit reasoned:

> [T]he ALJ determined at step two that Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical.

11

*Winschel*, 631 F.3d at 1181. Along the same lines, the Eleventh Circuit determined an ALJ's hypothetical question to a VE was improper where the ALJ found a claimant's bipolar disease was a severe impairment that caused significant limitations in the claimant's ability to perform work activities but included no limitations associated with that limitation. *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1047 (11th Cir. 2020). These decisions are distinguishable from this case. Here, the ALJ concluded Plaintiff's depressive disorder was "non-severe" that is, it "[did] not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities" (Tr. 17). *See McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (holding an impairment is not considered severe if the "abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience"). Plaintiff does not challenge the severity determination, but instead argues that a finding of "mild" limitation means that the claimant is "slightly limited," and that "slightly limited" is different from "no" limitation, thus entitling Plaintiff to a limitation reflected in the RFC. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00F(2)(a)–(b). In contrast to the ALJ's step-two findings in *Winschel* and *Samuels*, Plaintiff fails to connect the ALJ's mild-limitation paragraph B findings to a work-related limitation. *See Winschel*, 631 F.3d at 1181; *Samuels*, 959 F.3d at 1047; *see also* 20 C.F.R. § 404.1520a(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your

ability to do basic work activities."). Additionally, the persuasive precedent demonstrates that ALJs are not obligated to include mental limitations in the RFC even when they find "mild" limitations in the paragraph B criteria. *See Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979–80 (11th Cir. 2016) (finding that the ALJ did not err by failing to include limitations in the RFC related to the plaintiff's non-severe mental impairment when the ALJ found that the plaintiff had only "mild" limitations)[4]; *Medwit v. Comm'r of Soc. Sec.*, No. 2:20-cv-143-JLB-NPM, 2021 WL 1341390, at *5 (M.D. Fla. Feb. 22, 2021) ("Since the ALJ only assessed 'mild' limitations in the four areas of mental functioning, the ALJ did not err by not providing a mental RFC."), *report and recommendation adopted*, 2021 WL 1138179 (M.D. Fla. Mar. 25, 2021); *Bryant v. Comm'r of Soc. Sec.*, No. 2:20-cv-294-JLB-NPM, 2021 WL 4067464, at *11 (M.D. Fla. July 29, 2021) ("[T]he ALJ found mild limitations in all four functional areas[, but] did not err in failing to include [functional] limitations in the RFC related to [the plaintiff's] depression, anxiety, bipolar disorder, or insomnia."), *report and recommendation adopted*, 2021 WL 3855941 (M.D. Fla. Aug. 30, 2021); *Sprague v. Colvin*, No. 8:13-cv-576-T-TGW, 2014 WL 2579629, at *6 (M.D. Fla. June 9, 2014) ("[T]he plaintiff's assertion that the 'mild' findings meant he had some mental functional limitation is unpersuasive."); *Eutsay v. Kijakazi*, No. 21-21164-CV, 2022 WL 1609088, at *9 (S.D. Fla. May 4, 2022) (finding that the ALJ was not required to include mental

---

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

RFC limitations despite finding "mild" limitations in the paragraph B criteria), *report and recommendation adopted*, 2022 WL 1605318 (S.D. Fla. May 20, 2022); *Chestang v. Comm'r of Soc. Sec.*, No. 8:21-CV-482-MRM, 2022 WL 4354849, at *8 (M.D. Fla. Sept. 20, 2022) ("ALJs are not obligated to include mental limitations in the RFC even when they find 'mild' limitations."). Moreover, as outlined in the foregoing, the ALJ satisfactorily considered Plaintiff's non-severe mental limitations in the formation of the RFC.

Accordingly, the ALJ properly evaluated the severity of Plaintiff's mental impairments and his decision that Plaintiff's mental conditions do not limit his ability to perform work-related activities is supported by substantial evidence. Because there was no error in the formulation of the RFC, and the RFC was incorporated into the hypotheticals posed to the vocational expert, there was no error concerning the opinions elicited from the vocational expert. Thus, the ALJ's decision is affirmed as to Plaintiff's first argument.

### B.    Plaintiff's Headaches

Plaintiff next contends that the ALJ erred in the formation of the RFC because the ALJ failed to include a specific limitation associated with Plaintiff's headaches, specifically that Plaintiff would "be off-task with nausea and dizziness for at least some portion of the workday" (Doc. 19, at 7).

As already noted, to determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the

claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Schink*, 935 F.3d at 1268 ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC"); *see Jamison*, 814 F.2d at 588 (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

As part of this consideration, the ALJ also considers the claimant's subjective complaints. To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Consideration of a claimant's symptoms therefore involves a two-step process, wherein the Commissioner first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2017 WL 5180304, at *3–9. If the Commissioner determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the Commissioner evaluates the intensity and persistence of those symptoms to

determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *3–9. Notably, in considering a claimant's subjective complaints, the ALJ considers both inconsistencies in the evidence and the extent to which any conflicts exist between the claimant's statements and the rest of the evidence, including the claimant's history, signs and laboratory findings, and statements by treating or nontreating sources or other persons about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(c)(4). When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated credibility finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*) (citation omitted).

Here, in formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 20). As part of the ALJ's analysis, the ALJ acknowledged Plaintiff's alleged limitations. The ALJ noted that Plaintiff "stated that due to the unpredictable nature of his pain and nausea, it is impossible to make

plans or honor commitments" and that Plaintiff's "symptoms interfere with his concentration and ability to focus on tasks" (Tr. 20, 195). Additionally, the ALJ considered Plaintiff's reported constant pain and that "there is never a time that he is not experiencing a headache" (Tr. 20, 193). The ALJ also considered that Plaintiff stated it was difficult for him to drive and he had been incapable of doing housework or grocery shop for the past 18 months due to the headaches, nausea, and dizziness (Tr. 20, 53). Moreover, during the hearing, the ALJ asked the VE whether a hypothetical individual could perform Plaintiff's past work if the person were "off-task or absent" for either nine minutes per hour or one day per month (Tr. 58). While the ALJ acknowledged these subjective complaints, the ALJ explained that Plaintiff's testimony regarding the severity of his symptoms was inconsistent with the treatment records. Specifically, the ALJ was persuaded by a healthcare provider who stated that Plaintiff's medication appeared to be "working well" and that his headaches were "80% improved"[5] (Tr. 22, 292 312). Elsewhere in the record, treatment notes show similar remarks about the efficacy of Plaintiff's medication (Tr. 318–19, 322, 399). In support, the ALJ also identified several inconsistencies in Plaintiff's reports of his symptoms and the medical evidence that detracted from

---

[5] Plaintiff argues that "less headaches are different from no headaches" and that "the ALJ did not accommodate for any time off task for the 20% of headaches that he admits remains even when Plaintiff is taking propranolol" (Doc. 19, at 11). It is unclear what Plaintiff intends to argue by this. The ALJ did not "admit" that Plaintiff has any specific number of headaches, but rather cited this evidence in support of his decision to discount Plaintiff's allegations concerning the nature and severity of the headaches (Tr. 22).

Plaintiff's credibility. For example, the ALJ referenced a consultative examination performed by Michael Rosenberg, M.D.:

> Notably, *the claimant rode his motorcycle from Venice, Florida to Sarasota Florida to attend the appointment; Yet, he wore sunglasses in the office because of the glare of the office lights*, complaining that these would result in headaches, and pain in his eyes. Notwithstanding this, his statements at this visit overall are inconsistent with his testimony wherein he stated that he has been unable to drive, shop, or perform household tasks for the prior 18 months due to worsening of his symptoms. On examination, the claimant displayed normal gait with no dizziness noted.

(Tr. 21, 388). The ALJ also found it notable that while Plaintiff stated his headaches began after a motor vehicle accident in 2010, it was not until 2017 that Plaintiff alleged he became unable to work (Tr. 17, 42–47). Plaintiff was able to both work and earn a registered nursing license during this time period (Tr. 20, 44–47). The ALJ also noted that Plaintiff's activities of daily living[6] appeared to be mostly intact including driving, shopping in stores, mowing the lawn, preparing meals, going to restaurants, handling personal finances, and using a computer (Tr. 20, 206). Plaintiff also stated he enjoys fishing, water sports, watching the television, and listening to music (Tr. 208). Additionally, state agency medical consultants specifically found Plaintiff's headaches to be a non-severe impairment (Tr. 22–23, 66, 68–70). Then,

---

[6] Plaintiff argues that "nothing in the record establishes that Plaintiff performs any daily activities that equate to 8-hour work, 5 days a week" (Doc. 19, at 12). However, the ALJ properly considered Plaintiff's daily activities as a source of evidence to discredit Plaintiff's subjective complaints. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.1997) (affirming ALJ determination that claimant's claims of work impairment could not be squared with her ability to care for herself and manage daily activities of childcare and housework); *Dyer*, 395 F.3d at 1212 (holding the ALJ properly considered the claimant's activities of daily living in concluding that the claimant's subjective complaints were inconsistent with his testimony and the medical record).

on reconsideration, another state medical consultant found that the evidence did not establish any severe impairment, including headaches (Tr. 22–23, 77–79). The ALJ found these opinions "mostly persuasive" based on their consistency with the medical evidence. Thus, the ALJ found that Plaintiff's "headaches and accompanying symptoms were a severe impairment, but they were not disabling and not as severe as he alleges" (Tr. 22). Despite that, considering those subjective complaints "in the light most favorable to the claimant, the ALJ "generously added additional limitations" (Tr. 23). Specifically, the ALJ precluded from Plaintiff's RFC any outdoor work, work that would involve bright or flashing lights, and work that would include "even moderate exposure to industrial hazards and unprotected heights" (Tr. 22). Thus, the Court finds that the ALJ articulated explicit and adequate reasons for discrediting Plaintiff's testimony and that substantial evidence supports this determination.

Plaintiff attempts to argue that he was entitled to a limitation associated with his being "off-task for the time it takes for his headaches to recede and his nausea and dizziness to resolve" (Doc. 19, at 9). Plaintiff explains that

> once it is conceded that he has any headaches affecting his ability to perform work-like activity for any time period, the ALJ was inarguably obligated to include these in the RFC and obtain testimony from the VE on how they would affect a person's ability to engage in sustained full-time competitive work

(Doc. 19, at 13). As an initial matter, it is worth noting that the ALJ in fact *did* "obtain testimony from the VE" on how Plaintiff's proposed limitations would impact Plaintiff's ability to work  (Tr. 58). But more importantly, Plaintiff's

argument fundamentally misunderstands this Court's standard of review. The ALJ found Plaintiff's headaches were not as severe as alleged and included some limitations—those associated with bright lights—but not others—limitations associated with being off task. As already discussed, the ALJ discounted Plaintiff's subjective complaints and that determination was supported by substantial evidence. Thus, the ALJ "was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *Allen v. Barnhart*, 174 F. App'x 497, 499 (11th Cir. 2006) (holding the ALJ was not required to include limitations in the hypothetical question where the ALJ had discredited the claimant's testimony which supported greater limitations). Without being required to do so because the ALJ validly discounted Plaintiff's subjective complaints, the ALJ "generously added additional limitations" (Tr. 23). The court may not reweigh the evidence or substitute its own judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178; *Bloodsworth,* 703 F.2d at 1239. The court instead considers only whether the ALJ applied the correct law and is supported by substantial evidence. *Wilson*, 284 F.3d at 1221. As the ALJ's decision was based on substantial evidence and employed proper legal standards, remand is unwarranted and the decision is affirmed.

## IV.

In sum, the ALJ provided substantial evidence in support of his decision and applied the correct legal standards in concluding that Plaintiff's impairments were not as limiting as alleged. Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is affirmed.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 10th day of March, 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record